IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

MICHAEL STEVEN GORDON         :

            v.                   :   Civil Action No. DKC 08-3358

OFFICE OF PERSONNEL MANAGEMENT  :

**MEMORANDUM OPINION**

Presently pending and ready for review is Defendant's motion for summary judgment. (ECF No. 25). The issues are fully briefed and the court now rules pursuant to Local Rule 105.6, no hearing being deemed necessary. For the reasons that follow, Defendant's motion will be granted.

**I.  Background**

Plaintiff Michael Steven Gordon initiated this action *pro se* on December 15, 2008, seeking to recover on a claim for health benefits from Defendant, the United States Office of Personnel Management ("OPM"). (ECF No. 1). Plaintiff is an enrollee in the Federal Employees' Health Benefits Program ("FEHBP") through his health insurance carrier, CareFirst Blue Cross Blue Shield ("CareFirst"). (ECF No. 25, Attach. 1, at 1). In 1999 Plaintiff was diagnosed with myofascial pain syndrome by

Dr. Bernard Filner. (*Id.* at 2)(citing AR 128, 131).[1] Myofascial pain syndrome is a chronic musculoskeletal pain disorder characterized by the presence of trigger points, decreased range of motion in affected muscle groups, weakness, and, on occasion, local autonomic disturbance such as localized perspiration. (*Id.*)(citing Taber's Cyclopedic Medical Dictionary, 20th Ed., p. 1419). To treat pain associated with this syndrome, Plaintiff received trigger point injections ("TPIs") from Dr. Filner beginning in 1999.

From 1999 until 2004, CareFirst reimbursed Plaintiff's claims for the TPIs from Dr. Filner and associated costs. In April 2004, CareFirst began to deny Plaintiff's claims for regular TPIs because it determined that the treatments had become maintenance therapy and were no longer covered under Plaintiff's policy because they were not "medically necessary". (*Id.* at 8)(citing AR 736-741). Plaintiff requested reconsideration of CareFirst's denial of his claims for TPIs in 2004 and ultimately appealed CareFirst's decision to the OPM as prescribed in 5 C.F.R. § 809.105. (*Id.* at 8-9). After an independent medical review pursuant to 5 C.F.R. § 890.105(e)(2)(ii), OPM determined that the treatments in 2004 were medically necessary and issued a final decision overturning

---

[1] Citations to AR refer to the OPM administrative record, submitted to the court as ECF No. 26.

CareFirst's denial and ordering CareFirst to pay Plaintiff for the treatments. (*Id.* at 9-10).

CareFirst again denied Plaintiff's claims for TPIs from January 6, 2005 to December 22, 2005 stating that they were not medically necessary. The CareFirst Benefit Plan for 2005 used the following standard to assess medical necessity:

> We determine whether services, drugs, supplies, or equipment provided by a hospital or other covered provider are:
>
> 1. Appropriate to prevent, diagnose, or treat your condition, illness, or injury;
> 2. Consistent with standards of good medical practice in the United States;
> 3. Not primarily for the personal comfort or convenience of the patient, the family, or the provider;
> 4. Not part of or associated with scholastic education or vocational training of the patient; and
> 5. In the case of inpatient care, cannot be provided safely on an outpatient basis.
>
> The fact that one of our covered providers has prescribed, recommended, or approved a service or supply does not, in itself, make it medically necessary or covered under this Plan.

(*Id.* at 10)(citing AR 114). CareFirst classified the TPI treatments as "maintenance or palliative rehabilitative therapy" which is not covered under the Plan and not medically necessary. (*Id.* at 11)(citing AR 39).

Plaintiff filed a request for reconsideration with CareFirst, and CareFirst submitted the claims for review to the

3

Plan's Medical Director and a Physician Advisor. (*Id.* at 11)(citing AR 156, 193-194). The reconsideration request was denied by CareFirst based on the conclusions of the Physician Advisor. (*Id.* at 12)(citing AR 156-158, 163-164)).[2] Plaintiff appealed the denial of his reconsideration request to OPM in February 2006. (*Id.* at 13)(citing AR 172). OPM sent all the medical records it received from Plaintiff and CareFirst's files for Plaintiff to an independent medical reviewer. The independent medical reviewer also concluded that the TPI treatments were not medically necessary and were a form of palliative rehabilitative therapy. (*Id.*)(citing AR 177-211, 213-217). The independent medical reviewer noted, however "without a new cervical spine MRI to compare to the 4/1/05 MRI, continuation of the TPI could not be considered medically necessary." (*Id.*)(citing AR 216). Following his review, OPM issued a final decision upholding CareFirst's denial of the claim on March 29, 2006. (*Id.*)(citing AR 218).

In response to the medical reviewer's comment regarding the lack of recent MRIs, Plaintiff sent two letters to CareFirst

---

[2] The Physician Advisor concluded that "[TPIs] are not appropriate to treat or prevent the condition, as they have been ongoing for 6 years on a weekly basis with no improvement." He further stated that "[t]hey are maintenance treatment, as they provided no sustained relief and required repeating on a consistently frequent basis." (AR 167).

4

questioning why an additional MRI had not been requested of him and stating that his April 2005 MRI could have been compared with his 2003 MRI. In addition, Plaintiff provided copies of his MRIs for the prior six years. (*Id.* at 14)(citing AR 220-221). OPM sent this additional information back to the independent medical reviewer to see if it would alter his analysis, but the reviewer again concluded that the TPIs were not medically necessary. (*Id.*)(citing AR 229)). On September 26, 2006, OPM issued a new final decision, upholding CareFirst's denial of the claims. (*Id.* at 14)(citing AR 231-22)).

Plaintiff filed his complaint challenging OPM's final decision denying coverage on December 15, 2008. (ECF No. 1). In August 2009, the court granted Defendant's motion to remand the case for further administrative proceedings so that Plaintiff could submit the additional documentation he had provided to the court to OPM for consideration by an independent medical reviewer. (ECF Nos. 14 and 15). On February 2, 2010, OPM issued a new final decision finding that the TPIs and associated services were medically necessary only during the period from January 6 to February 3, 2005. Any occipital nerve blocks during 2005 were also deemed medically necessary, but the denial of the remainder of Plaintiff's claims, all TPIs after February 6, 2005, was upheld. (ECF No. 25, Attach. 1, at 15)(citing AR 25-30). Shortly thereafter the case was

reopened. (ECF No. 22). On April 16, 2010, Defendant filed its motion for summary judgment. (ECF No. 25).

## II. Motion for Summary Judgment

### A. Federal Employees Health Benefits Program

The Federal Employees Health Benefits Act (FEHBA), 5 U.S.C. §§ 8901-8913 (2010), authorizes OPM to enter into annual procurement contracts with private carriers which then provide health plan benefits to government employees. *Id.* § 8903. Through the FEHBA Congress delegated to OPM the authority to decide the benefits and exclusions in FEHBA plans and to negotiate and contract for any benefits, maximums, limitations, and exclusions "it considers necessary or desirable." *Id.* § 8902(d). The FEHBA requires that a carrier pay an enrollee's benefits claim if OPM finds that the contract allows an individual to receive a payment for the service or treatment at issue. *Id.* § 8902(j).

OPM has established a mandatory administrative process for review of denied claims. 5 C.F.R. § 890.105. A covered individual must first submit denied claims to the carrier for reconsideration. *Id.* § 890.105(a)(1). If the denial is upheld after reconsideration, the enrollee may petition OPM for review. *Id.* §§ 890.105(a)(1) and (e). Only after the OPM review may an enrollee seek judicial review of the claim denial by filing a suit against OPM in federal court. *Id.* §§ 890.105(a)(1),

809.107(c); *see also Caudill v. Blue Cross & Blue Shield of North Carolina,* 999 F.2d 74, 77 (4th Cir. 1993), *overruled on other grounds by Empire HealthChoice Assurance, Inc. v. McVeigh*, 547 U.S. 677 (2006). "The recovery in such a suit shall be limited to a court order directing OPM to require the carrier to pay the amount of benefits in dispute." 5 C.F.R. § 809.107(c).

   **B.   Review of OPM Decision**

Defendant argues that summary judgment is warranted because OPM's decision upholding CareFirst's denial of Plaintiff's benefits claim was "a proper interpretation and application of the relevant provisions of the health benefits contract between CareFirst and OPM and is entitled to deference under the APA." (ECF No. 25, Attach. 1, at 16). According to Defendant, the decision was rational and based on relevant factors after a thorough review of the complete administrative record and not arbitrary, capricious, or contrary to law. (*Id.* at 18). In response, Plaintiff challenges both the process employed by OPM to reach its decision and the decision that the TPIs were not medically necessary.[3] Plaintiff argues that OPM has refused to

---

[3] Plaintiff also requests that the court order an audit of CareFirst to examine its pertinent records and accounts because of the number of CareFirst errors experienced by Dr. Filner's patients with chronic pain from 2001 to the present. (ECF No. 28, at 5-6). Pursuant to 5 C.F.R. § 890.107(c), the only remedy available to individuals challenging an OPM decision denying benefits is "a court order directing OPM to require the

7

provide him with copies of the medical reports associated with its review of his claim and failed to consider all the pertinent documents. (ECF No. 28, at 1-2). In addition, Plaintiff argues that the TPIs were medically necessary and that this determination is supported by at least two independent medical physicians—Dr. Loev, an anesthesiologist and pain specialist, and Dr. Powers, a neurosurgeon. (*Id.* at 1-3).

A court reviews OPM actions under the FEHBA pursuant to the Administrative Procedures Act ("APA"), 5 U.S.C. § 706, based on the administrative record that was before the OPM when it made its determination. *Burgin v. Office of Personnel Mgmt.*, 120 F.3d 494, 497 (4th Cir. 1997); *see also Malek v. Leavitt*, 437 F.Supp.2d 517, 526 (D.Md. 2006). Under § 706 of the APA, courts review agency decisions to determine whether they were "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." § 706(2)(A). In its analysis, the court must decide "whether the decision was based on a consideration of all the relevant factors and whether there has been a clear error of judgment." *Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 416, (1971), *overruled on other grounds by Califano v. Sanders*, 430 U.S. 99 (1977). Although the court's "inquiry into the facts is to be searching

---

carrier to pay the amount of benefits in dispute." The court cannot order OPM to conduct an audit.

and careful, the ultimate standard of review is a narrow one. The court is not empowered to substitute its judgment for that of the agency." *Id.*

In applying this basic principle to judicial review of OPM's health benefits determinations, the Fourth Circuit has applied seemingly conflicting approaches. In *Myers v. United States*, 767 F.2d 1072, 1074 (4th Cir. 1985), and *Caudill v. Blue Cross & Blue Shield of North Carolina*, 999 F.2d 74, 79-80 (4th Cir. 1993), the court treated OPM's decisions with the deference due to an agency's interpretation of its own rules and regulations. In *Myers* the Fourth Circuit concluded that it must defer to OPM's interpretation of benefits provisions "unless plainly erroneous or inconsistent with the regulation." 767 F.2d at 1074 (internal quotations omitted). Similarly, *Caudill* concluded that "[a] district court defers to OPM's interpretation of health benefit contracts unless 'plainly erroneous or inconsistent with the regulation.'" 999 F.2d at 80.

In contrast, in *Burgin v. Office of Personnel Management*, 120 F.3d 494, 497-98 (4th Cir. 1997), the Fourth Circuit determined that it was appropriate to review OPM's denial of coverage *de novo*. In *Burgin*, a federal employee had appealed OPM's denial of insurance coverage for his wife's full-time skilled nursing care, based upon an exception in the benefits

9

plan for "custodial care." *Id. at* 495. The court found that because "the essential question is one of the interpretation of the contract's language, a question of law clearly within the competence of courts," no deference to OPM's interpretation of the term "custodial care" was appropriate in the case. *Id.* at 497-98. The *Burgin* court proceeded to discard OPM's interpretation of the meaning and application of the terms "skilled nursing care" and "custodial or convalescent care" in the plan at issue and overturned the denial of coverage. *Id.*[4]

While the Fourth Circuit has not reconciled the conflicting approaches to OPM review, a subsequent district court case attempted to do so. In *Campbell v. Office of Personnel Management*, 384 F.Supp.2d 951 (W.D.Va. 2004), the district court determined that *Burgin*'s limitation was inapplicable where the crux of the patient's challenge to OPM's decision was its determination as to whether certain treatment was medically necessary. The plaintiff in *Campbell* was challenging the denial

---

[4] The client at issue had been treated at a nursing center after suffering a cardiac arrest. At the nursing center she had a feeding tube, a tracheotomy tube for breathing, and received insulin. *Burgin*, 120 F.3d at 495. Her insurance plan denied coverage because it did not cover "custodial or convalescent care". *Id.* OPM argued that while the plan expressly covered "skilled nursing care" that term was meant to refer only to care which was likely to result in recovery and not care directed to the maintenance of daily living functions. *Id.* at 498. The Fourth Circuit rejected this interpretation and concluded that OPM's approach was unreasonable and unsupported by the facts. *Id.* at 498-99.

10

of coverage for her abdominoplasty (colloquially known as a "tummy tuck"), a procedure that was recommended by her doctors to treat lower back pain. *Id.* at 952. The *Campbell* court decided that "the essential question [was] not one of contract interpretation, in which the meaning of a term in the Plan is disputed, but one regarding a judgment of medical necessity." *Id.* at 955. The court held that OPM was entitled to considerable deference under these circumstances because "OPM brings to the table substantial specialized knowledge regarding medical practice and procedure" making OPM "especially well suited to make determinations regarding the necessity of medical procedures." *Id.*

The OPM determination at issue here is analogous to the one in *Campbell*. CareFirst denied Plaintiff's claims because they were not deemed to be medically necessary, and OPM upheld the denial because it agreed with that finding. Thus, following the approach in *Myers*, *Caudill*, and *Campbell*, the court will uphold OPM's determination so long as it is not arbitrary, capricious, or contrary to law and will not conduct a *de novo* review.

OPM argues that its decision must be upheld because it considered the complete administrative record and reached a decision that was rational and based on the relevant factors. (ECF No. 25, Attach. 1, at 18). Defendant's determination that Plaintiff's TPIs were not medically necessary was based on the

report of the independent medical reviewer, Dr. Gevirtz and relevant medical literature. (*Id.*). Plaintiff counters that his treatments were medically necessary under the Plan's definition because they allowed him to work full time, prevented him from having to use opiates, and prevented his condition from deteriorating to the point that he would need a new liver or have major stomach issues. (ECF No. 28, at 2). In support, Plaintiff points to reports from two independent doctors, Dr. Love and Dr. Power, and a letter from the pharmacy (*Id.* at 2; Exhibits 3 and 10).

The court should not reevaluate the merits of an enrollee's claim or substitute its judgment on medical decisions for that of the OPM. *See Campbell*, 384 F.Supp.2d at 957-58. Here, Defendant has demonstrated that the decision to uphold CareFirst's denial of Plaintiff's claim was rational and supported by a thorough review of the record. On remand, Defendant submitted all relevant materials, including any additional records that Plaintiff wished to have considered, to an independent medical reviewer who was Board-certified in anesthesia and pain medicine, Dr. Clifford Gevirtz. (ECF No. 33, at 3)(citing AR 1-26). Dr. Gevirtz reviewed all the materials submitted to him and cited to six peer reviewed publications in support of his conclusion that Plaintiff's TPIs after February 6, 2005, were not medically necessary because

they were being used to treat chronic pain. (*Id.* at 4)(citing AR 26-30). Dr. Gevirtz's decision confirmed the decision reached by CareFirst. The fact that Plaintiff has presented reports from other doctors who disagree with this analysis is not sufficient for this court to conclude that OPM's decision was arbitrary or capricious.

Aside from his challenge to the merits of the OPM decision, Plaintiff raises a few procedural challenges. Plaintiff asserts that OPM refused to provide information regarding the type of medical professional reviewing his case and the records they created. (ECF No. 28, at 1). Plaintiff also asserts that OPM failed to consider all the evidence he submitted and improperly delayed its request for additional information when necessary. (*Id.* at 2). None of Plaintiff's arguments preclude the granting of summary judgment. Plaintiff's assertion that Defendant failed to provide information about its medical review process is contradicted by the record. The letter which Plaintiff asserts was excluded from OPM's review was in fact part of the administrative record. (*See* AR 11). Finally, OPM's delay in requesting additional MRIs does not necessitate a finding that the review process was arbitrary and capricious. Ultimately, OPM considered all the relevant documents and made an assessment that is substantiated by the facts.

For these reasons, summary judgment for Defendant will be granted.

                                   _____/s/_____
                                   DEBORAH K. CHASANOW
                                   United States District Judge